BOOK *et al.* v. EARL *et al.*, *Appellants.*

1. **Constitution**: COUNTY COURT, POWER TO CONTRACT. A county court cannot under the present constitution of the state contract a debt for any purpose in excess of its revenue for the current year.

2. —— : —— : IMPROVEMENT OF COURT HOUSE. Where it is desired to create a debt in excess of such revenue for the improvement of the county court house, such question must be submitted to the qualified voters of the county as required by the constitution.

3. **Revised Statutes, Section 5337, Construction of.** Revised Statutes, section 5337, relating to the power of the county court to alter and repair county buildings must be construed in subordination to the provisions of the constitution prohibiting the making of a debt by the court in excess of the county revenue for the current year.

4. **Statute**: CURRENT COUNTY EXPENSES. A contract for remodeling and building three new additions to the court house does not fall within "other ordinary current expenses of the county," mentioned in Revised Statutes, section 6818.

*Appeal from Holt Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*Woodson, Green & Burnes* for appellants.

(1) The power of the county court to alter, repair, or build any county buildings which have been erected, is expressly conferred by statute. R. S., sec. 5337; *Walker v. Linn Co.*, 72 Mo. 650. The proviso in Revised Statutes, section 5370, does not make any warrants illegal, but is a simple direction of the order of their payment where all the warrants to which it refers are issued in conformity to law and within the powers of the court. (2) The county court of Holt county, on the second day of May, 1881, having in the usual way provided an in-

come and revenue for that year of $28,000, was empowered by the laws of the state, at that time, to enter into and bind itself by the terms and conditions of the Bennett contract.    This contract was made, and on the same day an order was made appropriating from the funds of the county, the sum of $8,500.    These facts appear from the record of the court, and cannot be controverted by parol testimony.    *Dennison v. St. Louis, etc.,* 33 Mo. 168; *Medlin v. Platte Co.*, 8 Mo. 235; *Milan v. Pemberton,* 12 Mo. 598.    (3) Admitting, however, that section 5370, of the Revised Statutes, makes an absolute preference in favor of certain warrants, and makes illegal all other warrants, provided these preferred warrants aggregate an amount sufficient to exhaust the income and revenue of the county, still, before a court could be justified in applying this principle, it would certainly be necessary for those asking it to establish by evidence the fact that these subsequently issued warrants were issued for services of this preferred kind.    This evidence the plaintiff below did not attempt to produce, but on the contrary, the evidence, so far as it relates to this matter, shows that $5,600 of these warrants were issued for work performed in a previous year.    (4) The repairing of a court house is an expense necessary to maintain the county organization within the meaning of Revised Statutes, section 5370.    (5) The plaintiffs should have alleged and proved that they were tax payers.

*James Limbird* and *Johnston & Anthony* for respondents.

(1) The county court exceeded its authority in making the contract in question, as the county had no funds during the year 1881 to meet the expense called for by said contract.    Const., art. 10, sec. 12.    (2) The issuing to Bennett the warrants on the treasurer of Holt county was an attempt on the part of the county court

to pay either a debt in fact or an assumed one by the county to Bennett. *International Bank v. Franklin Co.*, 65 Mo. 105; *Springfield v. Edwards*, 84 Ill. 626; *Law v. People*, 87 Ill. 385; *Fuller v. Heath*, 89 Ill. 296; *Fuller v. Chicago*, 89 Ill. 282. (3) The debt of Bennett was not an ordinary current debt. *State ex rel., etc., v. Macon County Court*, 68 Mo. 28; *Vanover et al. v. Justices, etc.*, 27 Ga. 354. (4) Where the county court undertakes to impose an illegal burden on the citizen he has the right to enjoin the proceeding in its inception, and at every subsequent step until it reaches him by an actual levy on his property. *Overall v. Ruenzi*, 67 Mo. 203; *Wagner v. Meety*, 69 Mo. 105; *Newmyer v. Mo. & Miss. R. R. Co.*, 52 Mo. 81-89; 2 Dill. Mun. Corp. (2 Ed.) secs. 727-738; *Mathis v. Cameron*, 52 Mo. 81. (5) Plaintiffs do allege in their petition that they are tax paying citizens.

NORTON, J.—This suit was instituted by plaintiffs, as tax payers of Holt county, on behalf of themselves and other tax payers of said county, to enjoin and restrain the payment of certain warrants issued by the county court of said county to Moses Bennett. It is substantially averred in the petition that in the year 1881 the county court entered into an original, and two supplementary contracts with Moses Bennett, in which it was sought to bind the county to pay said Bennett the sum of $9,600, for making three additions to and remodeling the court house of said county, in the town of Oregon; that said work was to be done in the year 1881, and warrants aggregating said amount were issued to said Bennett during said year. It is then averred that the debt thus attempted to be contracted was in excess of the entire amount of revenue which could come into the treasury from all sources for county purposes for that year; that the court was, for that reason, without

power to contract the debt, and that the warrants issued to pay it were illegal and void.

The answer, besides a general denial, sets up that the work to be done under the contracts was executed according to the contract; that it was reasonably worth the price agreed to be paid.; that it was necessary work to be done, and that when done it was accepted and received by the county, and has ever since been used, and that the county court, at the time of the contract, appropriated $8,500 as a "court house fund," and the funds of the county were sufficient to pay the debt contracted.

On the trial the issues were found for the plaintiffs, and a decree entered enjoining and restraining the treasurer from paying said warrants, from which action of the court defendants have appealed.

It is clear, from the evidence in the case, that by virtue of a contract entered into on the third of May, 1881, with Moses Bennett, and two supplemental contracts thereafter, made in the same year, under which said Bennett was to build three new additions to and remodel the court house in the town of Oregon, according to certain plans and specifications, the county court undertook, and did, by the terms of said contracts, obligate the county to pay said Bennett sums in the aggregate amounting to $9,600. The evidence further shows that during the year 1881 the work was completed according to contract, and accepted by the county court, and warrants amounting to $9,600 issued to Bennett, payable out of the common fund of the county, which were not paid for want of funds. The evidence further shows that to meet the ordinary current expenses of the county for the year 1881, the county court levied a tax of fifty cents on the hundred dollars valuation on all taxable property, which was all that they could impose under the constitution, the total valuation of taxable property in Holt county being less than six million dollars. It also shows that the revenue derivable from this tax, and all other sources

of taxation, for the year 1881, amounted to $28,000, which sum the county court on the fourth of May, 1881, appropriated, as required by section 6818, of Revised Statutes, which appropriation was certified to the treasurer of the county, as required in section 6319, Revised Statutes. The evidence also shows that the county court at its May term, 1832, appropriated out of the revenue provided for that year, the sum of eleven thousand dollars for the payment of said warrants issued in 1881, and directed the treasurer to pay them. This state of facts presents the question whether, under the constitution and laws of the state, the county court had the power to contract the debt in question in excess of the revenues provided for the year 1881.

We are of the opinion that it had no such authority, for the following reasons: It is provided by section 11, article 10, of the constitution, as follows: " Taxes for county purposes  *  *  *  may be levied on all subjects and objects of taxation.  *  *  *  For county purposes the annual rate on property, in counties having six millions or less, shall not, in the aggregate, exceed fifty cents on the hundred dollars valuation.  *  *  *  For the purpose of erecting public buildings in counties, cities, or school districts, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city, or school district, voting at such election vote therefor."

Section 12, article 10, provides as follows: "No county  *  *  *  shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing

indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein. * * * *Pro--vided*, That with such assent any county may be allowed to become indebted to a larger amount for the erection of a court house or jail. *And, provided further*, That any county * * * incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same."

The restrictions and inhibitions contained in these constitutional provisions were evidently put there in view of a condition of things then existing, and which had existed for years previous, and under which the counties and municipalities of the state were becoming, and had become, ruinously involved in debt, virtually mortgaging the property of the tax payer for the payment of debts recklessly contracted, in many instances for other than governmental purposes, not only without the consent of tax payers, but against their protest. While no restrictions were imposed on the power to tax for valid existing indebtedness, but the contracting of a debt in the future, by the county in any manner or for any purpose, in any one year exceeding the revenue which the tax authorized to be imposed would bring into the treasury for county purposes for such year, unless expressly authorized to do so by the assent of two-thirds of the voters of the county voting at an election held for that purpose, and not then, even with such assent, if the existing indebtedness of the county, including the debt assented to, would exceed five per cent. of the taxable value of the property of the county, unless the debt proposed to be contracted is for the erection of a court house or jail, in which event, if assented to by two-thirds of the voters, the debt could be contracted, though it might

cause the indebtedness of the county to exceed five per cent. of the taxable value of the property in the county.

The evident purpose of the framers of the constitution and the people who adopted it was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, *supra*, is clear and explicit on this point. Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it.

In making the contracts, in 1881, with Bennett to remodel the court house and build three new additions to it, whereby a debt was sought to be imposed on the county for $9,600 in excess of the revenue of that year; in issuing the warrants of the county in that amount, and in making the order in 1882 for their payment out of the revenue provided for that year, the county court acted in direct violation of the constitution, and ignored the prohibitions it contains. If building three new additions to the court house and remodeling the same were, in their opinion, needful and expedient, the question as to whether or not a debt amounting to nearly ten thousand dollars in excess of all the revenue it was possible to raise to meet the ordinary and current expenses of the county should have been submitted to the qualified voters of the county, as required in sections eleven and twelve, *supra*, of the constitution. It is claimed by counsel that section 5337 conferred the power exercised by the county court. That section is as follows: "The county court of each county shall have power, from

time to time, to alter, repair, or build any county build-ings which have been, or may hereafter be, erected, as circumstances may require, and the funds of the county may admit ; and they shall, moreover, take such measures as shall be necessary to preserve all buildings and prop-erty of their county from waste and damage." The power here conferred is not only hampered with the condition that such alterations and repairs are only to be made when the funds of the county admit of its be-ing done, but is to be exercised in subordination to the constitution forbidding the making of a debt in excess of the revenues provided for the year. The revenue, or funds of the county, raised by the tax which section eleven of the constitution authorizes to be imposed is, by said section, to be devoted to the county purposes ; and the legislature, by section 6818, Revised Statutes, has declared to what particular county purposes the revenue thus raised should be devoted. The section is as fol-lows : "The county courts of the several counties of the state are hereby authorized and empowered, at the first regular term of such court after the taking effect of this act, and at the May term every year thereafter, to appropriate, apportion and subdivide all the reve-nues collected, and to be collected, and moneys received, and to be received, * * * in the following order : 1. A sum sufficient for the payment of all the necessary expenses that may be incurred for the care of paupers and insane persons of such county. 2. A sum sufficient for the payment of all necessary expenses for the building of bridges and repairing of roads, including the pay of road overseers. 3. A sum sufficient for the payment of the salaries of all county officers, where the same is, by law, made payable out of the ordinary revenues of the county. 4. A sum sufficient for the payment of the fees of grand and petit jurors, judges and clerks of elections, and fees of witnesses for the grand jury of the county. 5. A sum sufficient for the payment of the

.other ordinary current expenses of the county not here-
inbefore specially provided for, which shall be known
.and designated as the contingent fund of such county.
'Which last sum shall in no case exceed one-fifth of the
total revenue of such county for county purposes for
:any one year."

The evidence shows that the total revenue for Holt
,county for the year 1881 was $28,000, and that the county
court, in obedience to the requirements of the above sec-
tion, on the fourth day of May, 1881, apportioned and
distributed said revenue as follows :

| | | |
|---|---|---|
| To paupers and insane | $ 1,500 | 00 |
| " road and bridge fund | 12,000 | 00 |
| " county officers' fund | 8,000 | 00 |
| " grand and petit jurors' fund | 1,500 | 00 |
| " contingent fund | 5,000 | 00 |
| Total | $28,000 | 00 |

It is provided by section 6819 that when the said
.order of the fourth of May was spread upon the records
of the county court, the moneys so set apart shall be held
to be a sacred fund for the purposes for which it was de-
signated ; and the county court thus making the order
shall have no power to divert the same or permit the
funds thus set apart to be drawn from the treasury of
such county except by warrants issued by order of said
.court on the respective funds so set apart and for the
purposes in section 6818 specified and set forth.   By sec-
tion 6820 it is made the duty of the county treasurer to
separate and subdivide the revenue of the county in com-
pliance with such order and it is made his duty to pay
out the revenues thus subdivided on warrants issued
by order of the court on the respective funds so set
apart and subdivided, and not otherwise.   It is further
provided in said section that any treasurer or other
county officer who shall fail or refuse to perform the

duties required of him or them under the provisions of the act and in the express manner provided and directed shall be guilty of a misdemeanor.

The evidence shows that during the year 1881 warrants were issued on these respective funds amounting to about $42,000 and $14,000 in excess of the revenue provided for that year, among which were the warrants issued to Bennett. There was also read in evidence an order, of date May 2, 1881, appropriating $8,500 out of the county revenue fund to be used for repairing and improvements on the court house according to plans on file. It may be said of this evidence that according to the evidence of the clerk and his deputy the date of the order was interlined by direction of the court after the order of May 4, appropriating the revenue, was made and entered. It may also be said of it that in making, if actually made on the day it bears date (of which there was some evidence), that the county court ignored the requirements of section 6818. That section plainly designated the county purposes to which the revenue should be applied. It will be observed that the section after designating the specific purposes to which it should be devoted, then requires a sum to be set apart as a contingent fund, not to exceed one-fifth of the entire revenue, for the payment of all other ordinary current expenses not therein specifically provided for. So that if the debt sought to be incurred in building three new additions to the court house and remodeling the same, at a cost of nearly ten thousand dollars, comes within the meaning of "other ordinary current expenses," which, we think, is not the case, the utmost that the county court could have appropriated was about $5,600, that being the one-fifth of the entire revenue provided for that year. Keeping in view the fact that the county court in levying a tax for county purposes for the year 1881 had gone to the extreme verge of the limit allowed by section eleven, article ten, of the constitution and the

fact that the revenue resulting from all sources of taxation for that year amounted only to $28,000 ; keeping in view these facts and the further fact that by section 6798, Revised Statutes, the county court was authorized to levy such tax for "current county expenditures," and the further fact that the extraordinary expenditure of $9,600 contemplated by the contracts with Bennett were not for ordinary repairs, but for remodeling and building three new additions to the court house does not come within the meaning of current county expenditures, as shown by section 6818, *supra*, we must hold that the order of May 2, 1881, was unauthorized ; and keeping in view the fact that the debt of $9,600 sought to be contracted was in excess of the revenue provided for the year 1881, we must hold, under the provisions of the constitution here referred to, it invalid and also the warrants issued to Bennett under the contract.

It is said that this ruling will work a great hardship, inasmuch as the work contracted for was done according to the contract, was worth the price agreed to be paid, and was accepted and has ever since been used by the county. This may be so, but we are powerless to relieve against it. It was said in *Wolcott v. Lawrence County*, 26 Mo. 272, when a like case of hardship was before the court: "That the law is a warrant of attorney to the county court. All its provisions are plain, and the contractor, before he undertakes the work, as he deals with an agent whose powers and duties are prescribed, ought to see that the agent is pursuing his authority ; for the agent cannot bind the county, except as it is commanded or permitted to do. * * * If any effect is to be given to the law at all, its plain directions must be followed, and to allow a manifest departure from them, would not only be a violation of an established rule that governs the relations of principal and agent, but would remove all of the restrictions which the law

has imposed upon county courts in contracting debts to be paid by the county."

Judgment affirmed in which all the judges concur.