ANDREW COUNTY *ex rel.* KIRTLEY, *Appellant,* v. SCHELL *et al.*

Division Two, June 16, 1896.

1. **County Warrants**: PAST INDEBTEDNESS: REVENUE. Valid county warrants, unpaid because a sufficient amount to pay was not collected under the annual tax levy, may be paid from the excess of revenue remaining in any succeeding year after the payment of the current expenses of such year, by the issuance of new warrants as provided by the act of the general assembly of March 31, 1893 (Laws, p. 131), or, if there be no excess, then as provided in Revised Statutes, 1889, section 7654, by an order of the circuit court directing a special levy for that purpose.

2. ———: ———: ———. County warrants for past indebtedness, though valid, can not be paid from the revenue provided for current expenses, until all warrants, drawn for expenses of the year for which the taxes were levied, have been paid.

3. **Statutes**: CONSTRUCTION. Statutes relating to the same matter should be considered together and that construction adopted which will give effect to all of them.

4. ———: ———. The letter of a statute may be enlarged or restricted according to the true intent of the framers of the law.

*Appeal from Andrew Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

AFFIRMED.

*David Rea* and *P. Mercer* for appellant.

(1) It was the duty of defendant as treasurer of Andrew county to pay all county warrants legally drawn by the county court on account of the ordinary and

usual expenses of said county, and presented for payment by the legal holders thereof, out of the funds mentioned in such warrants, in the order in which they were presented for payment.  R. S. 1889, sections 3166, 3167, 3168, 7665. (2) By the agreed statement of facts upon which this case was submitted to the court below it is admitted that the warrants described in plaintiff's petition were issued against the funds described in said petition for expenses incurred by the county of Andrew during the several years in which said warrants were issued, and that said warrants taken alone and separate from the unpaid warrants of previous years, were not in excess of the revenue for the several years when issued.  Under this agreement all the warrants sued on in this case were legal warrants.  Section 12, article 10, Constitution of Missouri, 1875; *Catron v. Lafayette Co.*, 106 Mo. 659, and authorities cited; *Reynolds v. Norman,* 114 Mo. 509; *Barnard & Co. v. Knox County,* 105 Mo. 382. (3)  These warrants were issued at the time they respectively bear date, and were presented for payment at the times stated in the petition, and payment was refused for want of funds and they were then and there registered by the treasurer as required by law, and on the eighteenth day of January, 1894, said warrants were presented to defen lant, Schell, treasurer of said county of Andrew, and payment demanded, which was refused, and at the time defendant refused to pay the said warrants on the eighteenth day of January, 1894, there was money enough in the several funds on which said warrants were drawn to have paid them and all unpaid warrants drawn on said funds and presented for payment prior to the time these warrants were first presented for payment.  (4)  Defendants in their answer admit that the defendant Jacob Schell was and is the treasurer of said county of Andrew, and the other defendants were his bondsmen as stated in plain-

tiff's petition. (5) The defendant Jacob Schell, as such treasurer, having failed to pay the warrants sued on when presented to him for payment on the eighteenth day of January, 1894, became liable to pay the relator, Kirtley, double damages for the injury sustained which may be recovered by an action in the ordinary form against said Schell and his codefendants, as sureties on his official bond. Section 3203, R. S. 1889; *State v. McCrellus*, 4 Kan. 250. (6) A county warrant lawfully issued in payment of an indebtedness of one year may be paid out of the revenues of a subsequent year. *Reynolds v. Norman*, 114 Mo. 509.

*Simmons, Keller & Castle* and *Huston & Parrish* for respondents.

(1) The purpose of our constitution was to inaugurate the cash system in the administration of county affairs—that each year should pay its own expenses. Sec. 12, art. 10, constitution; *Book v. Earl*, 87 Mo. 246; *Barnard v. Knox Co.*, 105 Mo. 382. The only tax that can be levied is an annual tax. R. S. 1889, sec. 7662. The purpose for which it is levied is * * * for current county expenditures. R. S. 1889, sec. 7653. The county courts shall subdivide the revenue at the May term of each year and set apart a sum sufficient to pay the ordinary current expenses. R. S. 1889, section 7663. The moneys so set apart shall be a sacred fund for the purposes for which it has been designated. R. S. 1889, sec. 7664. It shall be the duty of the county treasurer to pay the revenue on warrants issued by order of the county court on the funds so set apart, and not otherwise. R. S. 1889, sec. 7665. The legislature has provided for the payment of such warrants as are in question by passing the law contained in Session

Acts of 1893, page 131, which would indicate that the then existing laws were not applicable to the payment of warrants such as are in controversy. County treasurers have no authority to pay warrants drawn upon funds other than the funds of the current year, except by the provisions found in Session Acts of 1893, page 131. The case of *Reynolds v. Norman*, 114 Mo. 509, is not in point in this case. Because the collector represents the county as to all county taxes, he is not required to allow the set-off as against any funds—he has nothing to do with any funds created by article 5, chapter 38, Revised Statutes, 1889, whereas the treasurer can only pay out of a particular fund provided for that purpose. But aside from the obvious distinction between the functions of the two officers we contend that the *Reynolds* case is bad law—should not be followed, but should be overruled.

BURGESS, J.—This is an action against the defendant Schell, as principal, and his codefendants as sureties, on his bond as treasurer of Andrew county for the penalty prescribed by section 3203, Revised Statutes, 1889, for failing and refusing to pay when presented to him by plaintiff for payment certain county warrants issued by the county court of that county, of which plaintiff is the holder. From a judgment for defendants plaintiff appealed.

There are seven counts in the petition, based on as many different warrants. The first count is on a county warrant issued December 31, 1890, for $200. Second count on a warrant issued December 2, 1889, for $133.20. Third count on a warrant issued November 6, 1889, for $100. Fourth count on a warrant issued December 2, 1889, for $25. Fifth count on a warrant issued January 7, 1890, for $158.80. The

warrants amount in the aggregate to $861.50 without interest.

The case was tried by the court on the following agreed statement of facts:

"That the several warrants described in the petition were issued against the funds described in said petition and named in said warrants respectively, for expenses incurred by said county during the several years in which issued; that the amount of the warrants drawn in each of said years, prior to the time these warrants were severally issued added to the warrants issued in previous years, and which were, at the time these warrants were severally issued, outstanding and unpaid, was in excess of all the revenues provided for said county from all sources for the years in which said warrants in suit were issued, but that the warrants issued by the county court of said county for the several fiscal years in which these warrants were issued were, if taken alone and separate from the unpaid warrants of previous years, not in excess of the revenue for the several years when issued.

"That the relator, Nicholas Kirtley, was county treasurer of said Andrew county from the ninth day of July, 1889, to the first day of January, 1891; that during that time he paid county warrants in the order of their presentation, without regard to date of issue, and that during that time he paid off warrants drawn upon the several funds against which the warrants in suit are drawn, more than a sum sufficient to pay the several warrants here in suit and which warrants so paid by him were, when issued, within the revenue of the county for the respective year when issued, but when the outstanding and unpaid warrants of previous years were added to the warrants issued and unpaid during said several fiscal years, there had been, at the time the warrants so paid by him were issued, more

than enough to exhaust all the revenue provided for said fiscal year from all sources.

"That the warrants in suit were issued at the time they respectively bear date, and were severally presented for payment at the times stated in the petition, and that payment was refused for want of funds, and said warrants were then and there registered by the treasurer, as stated in plaintiff's petition, and that the relator is the legal owner and holder thereof.

"That, on the eighteenth day of January, 1894, the said warrants were presented to the treasurer, Jacob Schell, of Andrew county, at his office, and payment demanded, which was refused.

"That for each year during which the defendant, Jacob Schell, has been treasurer of Andrew county, the county court has in all things, according to law, by an order of said court, entered of record, apportioned all the revenue of said county for the ensuing fiscal year, and that the treasurer aforesaid, Jacob Schell, has, in accordance with and in obedience to such order of apportionment, set apart all funds coming into his hands belonging to the county revenue to the several funds, and has adopted and adhered to the rule of paying out of such several funds so apportioned the warrants drawn on said several funds by the county court during such fiscal year, and that he has so applied all money coming into his hands for each year until the warrants issued against said several funds for such year were all paid. That after such payment there was a surplus of about $4,000 at the end of the fiscal year in the spring of 1893, which was applied to the old warrants issued in previous years in the order of their registered presentation, on new warrants issued therefor under the act of 1893. That at the end of the fiscal year terminating in the spring of 1894 there was a surplus, after paying all warrants issued during the

prior fiscal year, of about $5,000, which was applied as was the surplus in 1893.

"That when the warrants in suit were presented to the defendant Jacob Schell, as stated above, there was money enough in the several funds to pay the warrants, derived from the revenues of the county for the fiscal year ending in 1894, but that the treasurer had no funds of any kind in his hands, and never did have, derived from the revenues of the county for any of the years in which any of the warrants were issued.

"That at the time these warrants were presented to defendant Jacob Schell for payment there was money enough in the several funds to have paid these warrants and all unpaid warrants presented for payment, prior to the time these warrants were first presented for payment, if they had been paid in the order of their presentation without regard to warrants drawn for the fiscal year in which such warrants were so presented to defendant Schell in January, 1894."

The court over the objection and exception of plaintiff declared the law to be that: "Under the pleadings and agreed statement of facts, the plaintiff is not entitled to recover, and the finding should be for the defendants."

Plaintiff's contention is, that although the warrants described in the petition represent past indebtedness, they must be paid in the order of their presentation, out of a levy made and which could only be made for current county expenses, and which had been appropriated and set apart as a fund to pay warrants issued in payment of expenses of the current year.   Upon the other hand defendants contend that, under article 5, chapter 138, Revised Statutes, 1889, no levy can be made for other than current county expenses except by order of the circuit court, and that when such levy is made it creates a separate, distinct fund sacred to that

purpose only; it becomes a distinct fund in the hands of the treasurer applicable to that purpose alone. That taxes levied for current county expenses, appropriated and set apart to the several funds for current expenses as provided in article 5, chapter 138, are sacred to that purpose and can not be diverted by county court or treasurer to any other purpose until that purpose is fulfilled, and that the defendant treasurer did right in so applying such revenues, that the treasurer only pays out of funds provided, and if no fund applicable to the payment of these warrants has been provided then he, is not at fault, even though the warrants be legal and binding on the county.

By section 12, article 10, of the constitution of Missouri, it is provided that "No county * * *. shall be allowed to become indebted in any manner or or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the voters thereof voting at an election to be held for that purpose; nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein," etc.

In passing upon this section in *Book v. Earl*, 87 Mo. 246, it is said: "The evident purpose of the framers of the constitution and the people who adopted it was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, *supra*, is clear and explicit on this point. Under this section the

county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it."

In view of the agreement that the warrants involved in this controversy were issued against the proper funds for expenses incurred by said county during the various years in which they were issued, and that, when considered alone, and separate from unpaid warrants of former years were not in excess of the revenues for the several years when issued, and especially in the absence of evidence as to how the county became in default in the payment of its warrants, whether by drawing more warrants in some preceding year or years, than its revenues or by the loss or failure to collect some part of its revenues, we are not inclined to hold these warrants void, as having been issued in excess of the revenues of the year in which they were respectively issued.

It is indisputable, however, from the facts disclosed by the record, that the warrants are for past indebtedness, and not indebtedness for the current year in which they were presented for payment. A fund to pay such indebtedness can only be raised by compliance with section 7654, Revised Statutes, and in obedience to an order of the circuit court of the county as provided thereby, directing the county court of the county to make a levy for that special purpose. Or in case of an excess of funds in the treasury over and above a sufficient amount to pay the current expenses of the county for any given year, then such excess may be applied to the payment of valid warrants outstanding, in the order in which they may be presented for payment, as provided by section 3166, Revised Statutes. As sustaining this view the general assembly in

1893, passed an act entitled, "An act to authorize county courts to provide for the payment of and to pay outstanding county warrants in certain cases." Approved March 31, 1893. (Laws, 1893, p. 131.)

This act is, in all of its important features, like section 3166, only in that it provides that in all cases where warrants have been drawn for the purposes named in said act, and shall not have been paid out of the taxes assessed and collected for the year in which they were drawn, it shall be lawful for the county court of the various counties in this state having such outstanding warrants, to take up such warrant or warrants during any subsequent fiscal year, and issue a new warrant or warrants to the holders thereof for said old warrant or warrants, which shall be registered by the county treasurer and paid in like manner as the current warrants for said fiscal year. Provided, said warrant or warrants shall be paid only out of the surplus revenue of such county. When such warrants can be paid out of the surplus revenues of the county, as provided by said act, there can be no occasion for resorting to the mode pointed out for their payment by section 7654, *supra;* but in case there is not, then that may be done.

But plaintiff insists that Schell could not legally refuse to pay the warrants in question when there was sufficient money in the different funds on which they were drawn to pay them and all other outstanding unpaid warrants drawn on said funds, of prior presentation, or if he was authorized by law to postpone the payment of said warrants out of the revenues of any subsequent year till all the warrants issued in such year were fully paid. Section 3166, *supra*, provides that the county treasurer "shall procure and keep a well-bound book, in which he shall make an entry of all warrants presented to him for payment, which shall

have been legally drawn for money by the county court of the county of which he is the treasurer stating correctly the date, amount, number, in whose favor drawn, by whom presented, and the date the same was presented; and all warrants so presented shall be paid out of the funds mentioned in such warrants, and in the order in which they shall be presented for payment: *Provided, however*, that no warrant issued on account of any debt incurred by any county other than those issued on account of the ordinary and usual expenses of the county, shall be paid until all warrants issued for money due from the county on account of services that are usual, and for all expenses necessary to maintain the county organization for any one year, shall have been fully paid and liquidated.''

Section 3167, Revised Statutes, provides that ''no county treasurer shall refuse the payment of any warrant legally drawn upon him and presented for payment, for the reason that warrants of prior presentation have not been paid, when there shall be money in the treasury belonging to the fund drawn upon, sufficient to pay such prior warrants, and any such warrant so presented.''

If we are to be governed by the letter of the law as indicated by sections 3166 and 3167, *supra*, there is no escape from plaintiff's contention, but even under such circumstances we may, in arriving at the true intent and meaning of the law makers, consider all statutory laws with respect to the same matter together, as well, also, as the condition of affairs which led to their enactment. If plaintiff's contention be the law then all the revenue of any county for its currents expenses for any given year may at any time be absorbed, as soon as paid into the treasury, by outstanding warrants and thus deprive the county of the means provided for conducting its ordinary affairs, which is not only unreasonable to sup-

pose was the intention of the lawmakers, but seems to be in contrast with the true intent and spirit of the law. It was well said by SHERWOOD, J., in *Ex parte Marmaduke*, 91 Mo. *loc. cit.* 254, "the letter of a statute may be enlarged or restrained, according to the true intent of the framers of the law. *Whitney v. Whitney*, 14 Mass. 92; *State ex rel. v. Emerson*, 39 Mo. 80; *State ex rel. v. King*, 44 Mo. 283; *Riddick v. Walsh*, 15 Mo. 519. In such cases, the reason of the law prevails over its letter."

Sections 3166 and 3167 were on our statute books as early as 1865, and it is matter of common knowledge, from that time on up to the adoption of our present constitution in 1875, that many counties incurred indebtedness largely in excess of their revenues, and imposed upon the citizens onerous burdens in the way of taxation, and to stay their hands in that direction, and the depletion of their treasuries, was part of the purpose of the framers of the constitution in incorporating therein section 12, article 10, *supra*, by which counties are prohibited from becoming indebted in any manner or for any purpose for an amount exceeding in any year the income and revenue provided for such year, without the assent of two thirds of those voting at an election held for that purpose.

It is a familiar rule of construction of different statutes bearing upon the same subject-matter that they shall be so construed as to give effect to all of them, and this we think can be done by construing section 3166, to mean for current county expenditures. Such seems to be the construction placed upon this section by the legislature, from the fact that in 1879, it passed what is generally known as the Cottey law (section 7654, art. 5, chap. 138, Revised Statutes, *supra*), by which means are provided for the assess-

ment, levy, and collection of taxes for the payment of past indebtedness of counties.

The revenue thus collected becomes a special fund for that purpose, and can not be diverted under severe penalty, for any other purpose. In no other way can past indebtedness of a county for current expenses be paid, except from the surplus, if there be any, of the amount paid into the county treasury for county expenditures. Section 7663, Revised Statutes, provides that: "The following named taxes shall hereafter be assessed, levied, and collected in the several counties in this state, and only in the manner and not to exceed the rates prescribed by the constitution and laws of this state, viz: The state tax and the tax necessary to pay the funded or bonded debt of the state, the tax for current county expenditures and for schools." The words "current county expenditures," do not mean current expenditures for former years; they are not retrospective, hence no provision is made for the payment of outstanding warrants except as hereinbefore indicated, that is, under section 7654, *supra*, or out of the surplus revenues as provided by the act of 1893.

It is, however, insisted by plaintiff that no order can be made by the circuit court on the county court for the assessment, levy, and collection of taxes to pay outstanding county warrants, drawn for past county indebtedness. This we think is a misconception of the statute, but even if we be in error in regard to that matter, it is certainly true that suit can be brought by the holder of such warrants, against the county, judgment obtained, and an assessment levy, and collection of taxes to satisfy the judgment rendered, in the manner pointed out by said section 7654. *Wilson v. Knox County*, 132 Mo. 387.

In the case of *Reynolds v. Norman*, 114 Mo. 509,

which is relied upon by plaintiff as sustaining his contention, it does not appear that there were any warrants issued for the year 1891, outstanding and remaining unpaid at the time the warrant for the previous year 1889 was tendered in payment of taxes for 1891, or that the revenues for 1891 were not more than sufficient to pay the current expenses of the county for the year last named; hence what has been said in this case is not necessarily in conflict with the rule announced in that.

But in so far as what is said in that case is not in accord with our views as heretofore expressed in this, we must decline to follow it. The judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.