KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant, v. THORNTON.

Division One, December 12, 1899.

1. **Unconstitutional Law**: DUTY OF COURTS.   It is the duty of the courts to enforce the organic law and to brush aside any statute which conflicts with it, whether passed before or after the Constitution was adopted.

2. **County Warrants**: CURRENT EXPENSES.   The revenues for any one year must be applied to the payment of the current expenses of the county for that year, and only the surplus after these have been paid can be used to pay the warrants issued in some other year. Nor can county warrants issued to meet county expenses for one year be received by the collector in payment of taxes for any other year. This is the meaning of the Constitution (sections 11 and 12, article X), the intended effect of which was to abolish the credit system and establish a cash system in public business.

*Appeal from Texas Circuit Court.*—HON. L. B. WOODSIDE, Judge.

AFFIRMED.

WALLACE PRATT, I. P. DANA and W. J. ORR for appellant.

(1)   County warrants legally issued in 1893, 1894 and 1895 are receivable for county taxes levied in 1896.   R. S. 1889, secs. 3205 and 7604; Logan v. Barton County, 63 Mo. 336; Reynolds v. Norman, 114 Mo. 509; Wilson v. Knox

County, 132 Mo. 387. (2) Section 3205 (passed in 1835) has not been repealed or modified by subsequent legislation, but is in harmony therewith. R. S. 1889, secs. 3167 and 7604; Logan v. Barton County, *supra*; Reynolds v. Norman, *supra*. (3) Section 3205 has been retained without modification since the judicial construction thereof in Logan v. Barton County, *supra*, in 1876, until amended in 1899. Reynolds v. Norman, *supra*. (4) The amendment of section 3205 by the last legislature is a legislative construction that prior to said amendment warrants of one year were receivable for taxes of a subsequent year. State ex rel. v. County Court, 128 Mo. 439. (5) The language of section 3205 being plain and unambiguous admits of no construction in conflict with its plain letter. Endlich Intr. Stat., secs. 4 and 5; Wilberforce Intr. Stat. Law, p. 116; Stony Const., sec. 426; Black Intr. Law, p. 35, sec 36; Oates v. Bank, 100 U. S. 239; Reynolds v. Holland, 35 Ark. 559; Dudley v. Reynolds, 1 Kan. 285; Bedsworth v. Bowman, 104 Mo. 49; State v. Gammon, 73 Mo. 421; State v. Hayes, 78 Mo. 600; Henry & Coatsworth Co. v. Evans 97 Mo. 55; Bryant v. Russell, 127 Mo. 430.

MARSHALL, J.—This is an agreed case, submitted to the circuit court of Texas county, pursuant to the provisions of section 2233, Revised Statutes 1889, as follows:

"It is hereby stipulated and agreed between the plaintiff and defendant:

"1st. That the plaintiff is a railroad corporation organized under the laws of the State of Missouri.

"2d. That the defendant is the legally qualified and acting collector of the revenue within and for Texas county, Missouri.

"3d. That as such collector the defendant has in his hands the tax books of the said county for the year 1896, whereon appear the state, county, village and school taxes for the said year 1896.

"4th.   That there appear on said books the following taxes against this plaintiff:   State taxes, $560.66; county taxes, $1,121.33; school taxes, $1,368.02; village, $61.31.

"5th.   That plaintiff has paid all of said state, village and school taxes, and $421.33 on said county taxes, and has tendered in payment of the balance of said county taxes, county warrants issued by said county for the years 1893, 1894, and 1895, amounting in the aggregate to the sum of $700.   That said warrants were legally issued, and the plaintiff is the legal owner and holder thereof.   That plaintiff still tenders said warrants into court in payment of said county taxes.   And the defendant refuses to accept said warrants on the sole ground that county warrants issued in 1893, 1894 and 1895 do not constitute a legal tender in payment of taxes for 1896.   That said warrants are tendered in payment of what is known as the county revenue taxes for said year 1896, levied under section 7662, R. S. 1889.

"6th.   That plaintiff claims that said warrants constitute a valid and legal tender of county taxes under sections 3205 and 7604, R. S. 1889.   Defendant claims that said warrants do not constitute a legal tender for the reason that they were not issued for the year 1896, and because said warrants were issued prior to January 1st, 1896.

"7th.   It is further agreed that upon the filing by plaintiff in the office of the circuit clerk for said Texas county, a good and sufficient bond in the sum of $1,500 that the judge of the circuit court may issue an order restraining the collection of said county taxes until the final disposition of this case.

"That this cause is submitted under the provisions of section 2233, R. S. 1889, and it is agreed that the costs of this suit be taxed against the unsuccessful party.   It is also agreed that there were outstanding and unpaid warrants of 1896 and the revenue provided for 1896 will not exceed the expenses of said year."

The circuit court held that the warrants were "legally issued and are valid," but that they "do not constitute a legal tender for the taxes levied against the plaintiff for the year 1896, for the reason that said warrants were issued in 1893, 1894 and 1895. The court further finds that said warrants would constitute a legal tender for said taxes under sections 3205 and 7604, R. S. 1889, but for the ruling of the Supreme Court in the case of Andrew County ex rel. Kirtley v. Schell, 36 S. W. Rep. 206" (135 Mo. 31), "which is binding on this court."

After proper steps the plaintiff appealed to this court.

## I.

It is not denied that the decision in State ex rel. Egger v. Payne, 151 Mo. 663, decided by this court, in Banc, in July of this year, applies to and is decisive of this case, nor is it seriously denied that the decision in that case follows the principles announced in Andrew County ex rel. Kirtley v. Schell, 135 Mo. 31, nor yet that it conflicts in any way with what was said in Book v. Earl, 87 Mo. 246, was the purpose of the framers of the Constitution of 1875 in adopting section 12 of article X of the Constitution. It is contended, however, that the decision in State ex rel. Egger v. Payne, *supra,* is not in harmony with the decisions of this court in Logan v. County Court of Barton County, 63 Mo. 336; Reynolds v. Norman, 114 Mo. 509, and Wilson v. Knox County, 132 Mo. 387, and that those cases announce the correct rule, and hence it is asked in this case that the decision in Payne's case be reviewed and overruled.

It is true as contended by appellant, that in the cases cited by it, this court, construing section 3205, R. S. 1889, held that collectors of the revenue were bound to receive county and city warrants in payment of any county or city revenue accruing to any county or city issuing such warrants, without regard to when such warrants were issued and without regard

-to the revenue of the year for which the warrants were offered in payment. But in State ex rel. Egger v. Payne, *supra*, those cases, and that section (3205), as well as sections 3168, 7604 and 8163, R. S. 1889, were expressly considered, and it was held that those cases must be overruled, and that those sections of the statutes must yield, because the cases and the provisions of the statutes were in conflict with the "evident purpose and intent of the lawmaking power," that is, with section 12 of article X of the Constitution. It was plainly pointed out that the purpose of the constitutional provision quoted was to put counties and cities upon a cash basis, and to abolish the credit system upon which they had proceeded before the adoption of the Constitution of 1875, by prohibiting a county or city from becoming "indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose," etc. It was also expressly held in Payne's case that this was declared to be the purpose of section 12, article X of the Constitution, in Book v. Earl, and that it was held in that case, that: "Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it." It was also pointed out in Payne's case that it was decided in Schell's case, that: "County warrants for past indebtedness, though valid, can not be paid from the revenue provided for current expenses, until all warrants, drawn for expenses of the year for which the taxes were levied, have been paid." It is also a fact that the prior cases and the statutory provisions relied on by the plaintiff, were fully considered in Schell's case. The result reached in the Payne case was not hastily or ill advisedly arrived at, but was the logical effect of a gradually developed understanding and appreciation of the

true meaning of the provision of the Constitution quoted.    As claimed by counsel section 3205 has been on our statute books since 1835, but prior to the adoption of the Constitution of 1875 there was no organic law which stood in the way of its enforcement.    The result was, overwhelming debts were contracted, which necessarily went unpaid or excessive taxation had to be levied to pay them; the effect of which impaired the credit of the counties and cities, engendered recklessness and extravagance in the management of the public business and constantly oppressed the tax-payers.    These were the evils that sections 11 and 12 of article X of the Constitution were intended to remedy, first, by limiting the rate of taxation and, second, by limiting the yearly expenses to the revenue provided for each year.    The wisdom of these safeguards has been fully demonstrated by the experience and improved financial status of the counties and cities since those provisions were adopted.    It is the duty of the courts to enforce the organic law and to brush aside any statute which conflicts with it whether it was passed before or after the Constitution was adopted.    Under these provisions of the Constitution warrants may be issued to the extent of the revenue provided for the year in which such warrants were issued, and the warrants so issued each year must be paid out of the revenue provided and collected for that year.    If the revenue collected for any year for any reason does not equal the revenue provided for that year and hence is not sufficient to meet the warrants issued for that year, the deficit thus caused can not be made good out of the revenue provided and collected for any other year until all the warrants drawn and debts contracted for such other year have been paid, or in other words, only the *surplus* of revenue collected for any one year can be applied to the deficit of any other year.    Thus each year's revenue is made applicable, first, to the payment of the debts of that year, and secondly, if there is a surplus any year it may be applied on the debts of a

previous year. The intended effect of all which is to abolish the credit system and to establish a cash system in public business. If this rule results in any county not having money enough to pay as it goes or to run its governmental affairs, the remedy is not with the courts. Having reached this understanding of the meaning of the Constitution it follows, without the necessity of any analytical examination or comparison of statutes or prior decisions, that all statutes or decisions providing or holding a contrary rule must give way.

It follows that the judgment of the circuit court was right and it is therefore affirmed. All concur, except BRACE, J., who dissents.