THE STATE ex rel. NATIONAL BANK OF ROLLA v. JOHNSON, County Treasurer, Appellant.

In Banc, May 21, 1901.

1. **Revenue:** WARRANTS: PAYABLE IN OTHER YEARS. A county warrant valid when issued is not rendered invalid because the revenue provided to pay it is not collected during the year in which it was issued, or is misappropriated by the officers of the county for whose act the holder of the warrant is not responsible. On the contrary, the surplus county revenue remaining after the payment of all current expenses of every kind for the year for which such revenue was levied and collected, may be used in the payment of outstanding valid unpaid county warrants for previous years. (Overruling *obiter dictum* in State ex rel. v. Horstman, 149 Mo. 290.)

State ex rel. v. Johnson.

2. ————: ————: ORDER OF PAYMENT. Such warrants are to be paid in the order of their presentation and registration, and are not payable *pro tanto* if there is not a sufficient fund to pay all.

3. ————: ————: ORDER OF COURT. Where such surplus is applicable to the payment of the warrants of previous years in the order of their registration, it is the duty of the county treasurer to pay them without waiting for an order of the county court distributing such surplus among the various county funds. No further appropriation or order by the court is necessary. The warrant itself is the voucher the law recognizes as the treasurer's authority for paying it.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside, Judge.*

AFFIRMED.

*John H. Shanks* for appellant.

(1) It is the duty of the county courts of the several counties, at the May term, every year, to appropriate, apportion and subdivide the revenues collected and to be collected, and moneys received and to be received. The money collected and received would be money on hand or surplus revenue. R. S. 1899, sec. 9283. (2) The action of the county court, setting apart, appropriating and subdividing the revenue, is made a matter of record, and the funds so set apart are sacred to the purposes designated in the order, and can not be paid out except on warrants drawn against such funds. R. S. 1899, sec. 9285. (3) It is the duty of the county treasurer, every year, to separate and subdivide the revenues of the county in his hands, and as they come into his hands, in compliance with the order of the county court; to pay out the funds thus separated and subdivided on warrants issued by order of the county court out of the funds drawn against and specified in the warrant. R. S. 1899, sec. 9286. (4) Where there is an

excess of funds in the hands of the treasurer not needed for the purpose for which it was created, the treasurer has no authority to determine where such excess or surplus funds are to be used or applied; his duty is to disburse the moneys of the county after it has been set apart and appropriated by order of the county court. The county court alone has the authority to transfer the moneys of the county from one fund to another. R. S. 1899, secs. 6794 and 6795; State ex rel. v. Appleby, 136 Mo. 408. (5) The laws of 1893, approved March 31, 1893, gave the county courts authority to take up warrants like the one in question, and issue new ones against the surplus funds of subsequent years, but that law is now repealed (Acts of 1899, p. 142), and the only way a specific fund can be raised for the purpose of paying past indebtedness is the one provided by section 9274, Revised Statutes 1899. Andrew County ex rel. v. Schell, 135 Mo. 31. (6) While warrants issued in other years may be received by the collector of revenue in payment of taxes for a subsequent year, where there is an excess of revenue after payment of the current expenses of the county for such year, yet the treasurer can not pay off such warrants out of such excess until it is set apart or appropriated to the purpose. State ex rel. v. Payne, 151 Mo. 673. (7) The warrant in question is for past indebtedness for the year 1891, and if paid out of the excess of funds for the years 1895 and 1896, such excess must be first appropriated to that purpose by the county court, as the treasurer can only pay out of funds provided and drawn against by order of the county court. Andrew County ex rel. v. Schell, 135 Mo. 31. (8) The provisions of law requiring the treasurer to pay out money on warrants in the order of their registration, is applicable to the current fiscal year only, and has no reference to warrants representing past indebtedness. Sec. 6771, R. S. 1899; Andrew County ex rel. v. Schell, 135 Mo. 31; State ex rel. v.

Hortsman, 149 Mo. 290. (9) Even if it be not contended in this case by appellant that the surplus funds of any one year can not be applied to the payment of debts for any prior year, yet it is contended that this can only be done by an order of record of the county court setting apart and appropriating said surplus to that purpose, as the county court alone has the authority to appropriate and transfer funds. Secs. 9286, 6771, 6772, 6794, 6795, and 6798, R. S. 1899.

*L. F. Parker* for respondent.

Unpaid outstanding warrants issued in any year, may be paid out of surplus money arising from the revenue of a subsequent year; provided, the warrants and other indebtedness of such subsequent year have been paid. Reynolds v. Norman, 114 Mo. 509; Andrew County v. Schell, 135 Mo. 31; State ex rel. v. Payne, 151 Mo. 663; Railroad v. Thornton, 152 Mo. 570. Surplus money, arising from the revenue of a subsequent year, should be applied to the payment of unpaid outstanding warrants of former years, in the order of their registration. R. S. 1899, sec. 6771; Andrew County v. Schell, 135 Mo. 31. A county treasurer is only required (and hence is only permitted) to pay a county warrant when he has money enough in his hands, properly applicable thereto, to pay the entire warrant; and application of surplus revenue of one year, to the payment of unpaid outstanding warrants of prior years, pro rata, is impracticable. R. S. 1899, secs. 6772, 6775, 6776.

STATEMENT.

GANTT, J.—This is a proceeding by mandamus, to require the respondent, as treasurer of Texas county, to pay to

State ex rel. v. Johnson.

the relator the amount due upon a county warrant of said county, drawn for current county expenditures of said county during the year 1891, out of surplus funds in his hands, from the revenues for the years 1895 and 1896, which surplus remains after payment of all warrants issued for said years 1895 and 1896, and after reserving sufficient funds to pay all outstanding warrants which were registered by the county treasurer prior to the registration of relator's warrant, and amounts to more than the amount due relator thereon.

The return of respondent to the alternative writ is as follows:

"That he refused the payment of the warrant described in plaintiff's petition:

"First, for the reason that the said warrant was drawn against revenue provided for the current expenses for the fiscal year 1891, and that he had no funds in his hands at the time said warrant was presented, nor has he now any funds derived from the revenue levied and collected for the year 1891.

"Second. The surplus funds remaining in the county treasury of Texas county for the fiscal years of 1895 and 1896, were not delivered and paid over to the defendant as surplus funds of the years 1895 and 1896, but were derived from the revenue levied and collected for the current expenses of said years, and were not applicable to the payment of said warrant until set apart and appropriated to that purpose by the proper authority, which has not been done.

"Third. It was not the duty of the defendant to pay all warrants in the order they were issued, as stated in plaintiff's petition. He can only pay warrants in the order of their registration, and then only warrants issued for the current expenses of the current year."

Vol 162 mo—40

The county warrant which was the basis of this proceeding was as follows:

"$100.00            *State of Missouri.*        No. 1637. 91.
"Treasurer of the County of Texas,

"Pay to J. S. King, one hundred dollars, out of any money in the treasury, appropriated for county expenditure purposes.

"Given at the courthouse, at Houston, Missouri, this twelfth day of August, 1891.

"By order of the County Court.<br>"R. B. MEADOR, President.

"Attest:   J. S. KING, Clerk."

On the back of this said warrant was the following indorsement, to-wit:

"Presented and protested for want of funds, this twelfth day of August, 1891.

"J. A. BRADFORD, Treasurer."

Also assignments in the statutory form, showing title to the warrant in relator.

The facts were agreed to as follows:

"It is agreed as facts in the case, that the warrant in question is a valid and legal warrant, drawn by the county court of Texas county, Missouri, for the year 1891, and that there is now enough funds in the county treasurer's hands belonging to the general revenue funds of Texas county for the years 1895 and 1896, to pay all warrants that have been presented prior to the warrant in question, as well as to pay said warrant in question, and that all the warrants drawn for the years 1895 and 1896, have been fully paid off and discharged;

and plaintiff is the legal holder of the warrant; and that the taxes for the year 1891 were all paid out on other warrants."

The case was heard upon a motion for judgment upon the writ, the return, the warrant, and agreed statement, and in passing upon this motion the court, of its own motion, declared the law as follows:

"The court declares the law to be, that the levy of county revenue funds for any year is required to be paid by the collector into the county treasury, and by him applied to the payment of all legal and valid warrants drawn upon said fund for services performed or for contracts made by the said county during said year in the order of the registration of such warrants; and after all the indebtedness and expenses of said county for said year has been fully paid off and discharged, then the surplus funds collected from the revenues of said county, if any, are required to be applied by the county treasurer to the payment of the oldest outstanding warrants drawn upon said fund for any prior year. The oldest, as used herein, is determined by the registration of such warrants, and it is the duty of the county treasurer, when any surplus funds remain in his hands on the levy for any year, after all expenses and indebtedness for such year has been fully paid off and discharged, and the year has expired, to apply such funds to the payment of such oldest outstanding warrants for such former year, and no order of the county court is necessary as a prerequisite to such payment."

The court thereupon made the alternative writ peremptory, and respondent appeals to this court.

I. It is to be observed that the validity of the warrant and its ownership by the relator stand admitted.

It is also admitted and conceded that the funds in the hands of the county treasurer constitute a surplus derived from the revenue levied and collected for the years 1895 and 1896,

after the payment of all warrants drawn by the county court during said years for the payment of current expenses of the county of all kinds for those years, and more than sufficient to pay all warrants drawn for previous years and registered prior to relator's warrant.

Three propositions are presented:

*First.* Is the surplus revenue of a county, remaining after the payment of all current expenses of every kind for the year for which such revenue was levied and collected, applicable to the payment of outstanding valid unpaid county warrants for previous years?

*Second.* If so, what is the lawful method of applying such payment? Must the warrants be paid in the order of their presentation and registration, or are they payable pro rata to all the outstanding indebtedness?

*Third.* If such surplus is so applicable and if payable in the order of their registration, is it the duty of the treasurer to so pay them or must the county court first distribute the fund for the payment of such warrants before the treasurer can pay any of such warrants for past years' indebtedness?

These questions must all be answered by a construction and interpretation of our statute law on the subject in the light of the Constitution of this State.

*First.* A correct answer to the first proposition can only be given by keeping in view section 12 of article 10 of the Constitution, which ordains that "no county.... shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the

value of the taxable property therein."

It was ruled in Book v. Earl, 87 Mo. 246, that "the evident purpose of the framers of the Contstitution and the people who adopted it was to *abolish* in the administration of county and municipal government, *the credit system,* and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year." But it was at the same time said: "Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it."

It was then anticipated that, though the county court might not issue warrants in excess of the levy for a year's current expenses, and that a creditor might rely upon the fact that his contract was within the amount of revenue levied and provided, and trust to the power of the State to enforce its taxes, still it might happen from some unforeseen cause enough of the estimated amount of revenue might not be collected to pay all the warrants drawn against it in anticipation. Under such circumstances it has never been ruled that such a creditor's warrant was absolutely void and extinguished by the non-payment in the year in which it was drawn. On the contrary, this court has often said in no uncertain terms that it was valid and payable out of any surplus revenue in the hands of the county treasurer that might arise in subsequent years. [Randolph v. Knox County, 114 Mo. 142; Andrew County v. Schell, 135 Mo. loc. cit. 39; State ex rel. v. Payne, 151 Mo. loc. cit. 673; Railroad Co. v. Thornton, 152 Mo. 570; State ex rel. v. Allison, 155 Mo. loc. cit. 344; and on this point,

State ex rel. v. Johnson.

Reynolds v. Norman, 114 Mo. 509.]

Accordingly we answer the first proposition in the affirmative: that a warrant valid when issued is not rendered invalid because the revenue provided to pay it is not collected during the year for which it was issued, or is misappropriated by the officers of the county for whose act the holder of the warrant is not responsible.

*Second.* We are thus brought to the second proposition: in what order are these unpaid warrants to be paid? In the order of their registration, or *pro tanto,* if there is not a sufficient surplus to pay all?

This must be solved by the statutes. Section 6771, Revised Statutes 1899 (sec. 3166, R. S. 1889) of the article entitled "County Treasurers and County Warrants," provides that, "He (the county treasurer) shall procure and keep a well bound book in which he shall make an entry of all warrants presented to him for payment, which shall have been legally drawn for money, by the county court of the county of which he is the treasurer, stating correctly the date, amount, number, in whose favor drawn, by whom presented, and the date the same was presented; and all warrants so presented shall be paid out of the funds mentioned in such warrants in the order in which they shall be presented for payment. *Provided, however,* that no warrant issued on account of any debt incurred by any county other than those issued on account of the ordinary and usual expenses of the county, shall be paid until all warrants issued for money due from the county on account of services that are usual, and for all expenses necessary to maintain the county organization for any one year, shall have been fully paid and liquidated."

This statute was substantially adopted, except the proviso therein, in 1855 (R. S. 1855, p. 521, sec. 9), and was continued in General Statute 1865, page 227, section 8.

In the revision of 1879 the proviso was added to the section for the obvious purpose of having the statute conform to the Constitution.  [R. S. 1879, sec. 5370.]   It is found in the same words in the Revised Statutes of 1889 as section 3166.

This section then had been the law of this State for twenty years before the adoption of the Constitution of 1875.  Prior to that, it was not necessary that a county warrant should be drawn upon a special fund or that it should come to the holder during the year in which the indebtedness was created.  What, then, was the effect of the Constitution upon this section?  As was ruled in Andrew County v. Schell, 135 Mo. 31, and State ex rel. v. Payne, 151 Mo. 670, that section was modified by the Constitution to the extent that thereafter the warrants drawn by the county court in any year to meet all the necessary and current expenses for that year must first be paid in full in the order of their registration, and if a surplus was left, then the section operated on all other warrants just as it had previous to the adoption of the Constitution of 1875.   In a word, that section, in so far only as it conflicted with the provisions of section 12 of article 10 of the Constitution, became inoperative by force of the Constitution as soon as it went into effect, because inconsistent therewith.   But with this exception there is no such repugnancy as requires us to hold it was absolutely repealed, the rule of construction being that before it shall be construed as repealed by implication only, the two must be so repugnant that both can not stand, and, we think, with the modification we have mentioned, both can stand.   Such has been the opinion of the Legislature, we think, from the fact that this section has been preserved through three revisions since the adoption of the Constitution.   We conclude that this surplus, after the current expenses for the years 1895 and 1896 had all been paid, at once became subject to this general statute, section 3166, Revised Statutes 1889, which provides a just

and equitable rule for the payment of the debts of the counties. The preferred right of payment according to registration is not taken away further than the changed condition wrought by the Constitution requires, and when the Constitution is read into and with this section, it merely changes the order of payment so that the funds provided for each year's expenses is primarily the fund out of which warrants drawn for those expenses are to be paid according to their presentation and registration in that year, and when they are all paid and a surplus, as in this case, remains, then it is applicable to unpaid warrants, of former years and section 6771, Revised Statutes 1899, provides the rule of priority just as it did before its modification by the Constitution of 1875, and the surplus is not to be distributed pro rata.

But it was suggested that this interpretation of the statute was in conflict with the opinion in State ex rel. v. Horstman, 149 Mo. 290.

Unquestionably, there is an expression in that case holding a different view. The learned judge who wrote that opinion did say *arguendo*: "But the respondents are mistaken in their construction of section 3166, Revised Statutes 1889, (sec. 6771, R. S. 1899). The order therein prescribed for the payment of warrants, relates only to warrants drawn for county expenses for the current year, and has no application to past indebtedness" (citing Andrew County ex rel. v. Schell, 135 Mo. 31).

But a careful reading of that case will show that in that case the county court had levied a tax to raise twenty-five hundred dollars with the purpose of applying it to the outstanding unpaid warrants for former years; that the relator therein, the holder of one of said warrants, had obtained judgment on his warrant, and when the tax was collected he insisted that his judgment gave him priority over all other holders of war-

rants. He sought a writ of mandamus against the county court to compel it to appropriate the said fund to the payment of his judgment. The circuit court awarded the writ and this court reversed that judgment, holding that relator's judgment did not give him a priority over the other valid outstanding warrants; that the judgment on the warrant gave the plaintiffs therein no lien, and, moreover, that when the county court levied the tax and appropriated it, their duty ended "and the duty and responsibility of disbursement was on the county treasurer."

We think that the divisional opinion in that case, reversing the circuit court, was absolutely right, but for the reasons already given, we disapprove so much of the opinion which we have quoted as holds that section 3166, Revised Statutes 1889 (now sec. 6771, R. S. 1899), relates "only to warrants drawn for the county expenses for the current year and has no application to past indebtedness." As already said, it applies to both, subject to the modification wrought by the Constitution as already hereinbefore·explained in this opinion.

We think that observation, and another which indicates that the treasurer could only pay the warrants pro rata, can and should be regarded as *obiter* without in the least impairing the correctness of the judgment as a whole.

*Third.* It was not at all necessary for the county court to make any further appropriation of the fund before the treasurer could pay relator's warrant out of this surplus. The court is required to distribute the current tax into the different funds each year, and may, in proper cases, transfer moneys from one fund, when not needed, to another that is insufficient, but after all the warrants for any year have been paid there is no provision of law for distributing this surplus into different funds, but it is in the hands of the treasurer, as an executive officer, charged by the statute with the duty of disbursing the funds on

warrants drawn by the county court, and as the warrants have been drawn, all he has to do is to pay them in the order of their registration whenever he has money enough to take up a warrant, as the law makes no provision for a partial payment thereon, but requires him to take up the warrant itself as the only voucher the law will recognize when he comes to make his settlement for payments thereon.

The judgment of the circuit court awarding a peremptory writ was correct, and it is affirmed. All concur.