WILSON, *Appellant*, v. KNOX COUNTY.

In Banc, February 5, 1896.

1. **County Warrants, Action on:** LIMITATION. Revised Statutes, 1889, section 3195, which provides that a county warrant having been delivered but not presented for payment within five years from its date, or which having been presented and not paid for want of funds, shall not be again presented within five years after the funds shall have been set apart for its payment, "shall be barred and shall not be paid nor shall it be received in payment of any taxes or other dues," is a limitation of actions on warrants as well as a direction to the county officers, and governs such action instead of the general statute of limitations.

ON MOTION FOR REHEARING.

2. **County Warrants:** BONDS: GENERAL COUNTY FUND: CONSTITUTION. Warrants issued for the payment of a judgment rendered on county bonds issued prior to the adoption of the present constitution, and paid, are not charges under said constitution, article 10, section 11, on the general fund of the year, and, therefore, can not by reason of their prior issuance affect the validity of other warrants drawn on such fund during the year.

3. ———: FISCAL YEAR. Revised Statutes, 1889, section 8589, providing that the fiscal year of the state shall begin on January 1, and end December 31, of each year, controls in the matter of issuing county warrants.

4. ———. A county warrant drawn on the general county fund of one year may be paid out of the general fund of a subsequent year.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED AND REMANDED.

*L. F. Cottey* and *Gardiner Lathrop* for appellant.

(1) In Missouri, it has been repeatedly held: That the intention of the legislative act may often be gathered from a view of the whole and every part of the statute taken and compared together. When the true inten-

tion is accurately ascertained, it will always prevail over the literal sense of the terms. The occasion and necessity of the law, the mischief felt, and the object and remedy in view, are to be considered. *Humes v. Railroad*, 82 Mo. 227; *In the Matter of Bomino's Estate*, 83 Mo. 441; *White v. Chaney*, 20 Mo. App. 393; *Selden v. Hall*, 21 Mo. App. 475; *Powell v. Powell,* 23 Mo. App. 371; *Monks v. Strange*, 25 Mo. App. 14; *Welch v. Railroad*, 26 Mo. App. 367; *St. Joseph v. Porter*, 29 Mo. App. 610. (2) Respondent relies on the general statute of limitations of ten years. R. S. 1889, sec. 6774. Section 6791 of the same chapter provides that, "this chapter shall not extend to any action which is or shall be otherwise limited by any statute." This action is otherwise limited by section 3195, Revised Statutes, 1889. This section (3195), when considered in connection with section 6791, takes this case entirely from under the operation of the general statute of limitation of ten years. Section 3195 provides a complete remedy on county warrants, and was evidently intended to be the sole remedy. The latter section is "a special provision applicable to a particular subject," and was clearly intended to be the law governing county warrants. *State v. DeBar*, 58 Mo. 398; *St. Louis v. Ins. Co.*, 47 Mo. 149; *State v. Green*, 87 Mo. 587; *Payne v. Masek*, 114 Mo. 637. (3) The restrictions in section 11, article 12, of the constitution, do not apply to debts of the character involved in this suit. The section excepts "valid indebtedness now existing or bonds which may be issued in renewal of such indebtedness." *Lewellen v. Schooley*, 84 Mo. 455; *Barnard v. Knox Co.*, 105 Mo. 385. (4) By the second paragraph of the agreed statement, the plaintiff contends that the fiscal year begins January 1, and ends December 31, of each year; while defendant contends it begins March 1 of each year and

ends on the last day of the following February. The
General Statutes of 1865, section 11, chapter 10, pro-
vided that: "The fiscal year of the state shall com-
mence on the first day of October and terminate on the
thirtieth day of September in each year." (5) It
appears from the record in this case: *First*. That
defendant issued the warrants in suit for value received,
for county purposes, and that they were duly and
timely protested for lack of funds to pay them. *Second*.
That defendant has suffered no money to go into its
treasury subject to their payment, since the date of
their respective protests. *Third*. That defendant for
six years, since the issue and protest of said warrants,
only levied and extended upon its tax books an annual
tax of forty cents on the $100 valuation for county
purposes. *Fourth*. That defendant in 1887, made an
order declaring said warrants void, by prohibiting the
collector from receiving them in payment of county
taxes, and the treasurer from paying them in any
manner. Upon this record the defendant now asks
the court to declare said warrants worthless.

*O. D. Jones* and *Charles D. Stewart* for respond-
ent.

(1) The fiscal year of the county begins March 1;
in that case the warrant sued on in the second count
is admitted to be an over issue for that year, and is,
therefore, void. Page 18, paragraph 10, agreed state-
ment. (2) The ten cents extended on the road over-
seers' books, the years 1881–3–4–5–6–7, is a part of
the legal levies of those years, to make a total of fifty
cents on the $100. (3) The levy and collection of
fifty cents on the $100 in warrants or money, or war-
rants and money, per year fills the constitutional limit
in counties of less than $6,000,000. (4) The warrants

referred to in paragraph 7, page 16, is a part of the volume to be considered in determining whether the revenues of the year have been overdrawn. If so considered the two warrants sued upon are admitted to be void. (5) A warrant issued under the present law, "the Cottey bill," on the "officer's salary" or "pauper fund" is a warrant issued on "a special fund" in the sense that a general judgment can not be rendered on it against the county. (6) The fact no money "has been set apart," to pay a registered warrant does not prevent the running of the general statute of limitations of ten years. (7) The warrants are barred by statute of ten years' limitation. The warrant is to all intents and purposes the promissory note of the county. *Bank v. Franklin Co.*, 65 Mo. 105–112. "They were in effect the promissory notes of the city and plaintiff had a right to take and hold them." *Bank v. Lexington*, 74 Mo. 104, 105. It is due when issued and the general statute of limitations runs on it. 15 Am. and Eng. Encyclopedia, page 1218, note 5, and cases cited. The statute of limitation is generally held to a defense on a municipal warrant. *Ibid.*, page 1222, note 1, and cases cited.

BRACE, C. J.—This is an action on two county warrants duly issued and delivered by the county court of Knox county, one for the sum of $182.35, payable to John Gibler out of any money in the treasury appropriated for officers' salary fund, and by him duly assigned to plaintiff, dated the thirtieth day of June, 1880, presented to the treasurer of said county and protested for want of funds July 9, 1880; again presented to said treasurer, and protested for want of funds April 28, 1887. The other for the sum of $157.88, payable to Timothy Kelley out of any money in the treasury appropriated for pauper fund, and by him duly assigned

to plaintiff, dated the fourteenth day of February, 1883, presented to the treasurer of said county and protested for want of funds on that day; again presented to said treasurer and protested for want of funds on the twenty-eighth of April, 1887.

The suit was instituted on the nineteenth of May, 1893; was tried by the court without a jury; the court declaring the law of the case to be "that an action accrued to plaintiff or the owners or holders of the warrants more than ten years before the bringing of this action * * * and that the action on each of them was barred at the time of bringing this suit by the statute of limitations of ten years," rendered judgment for the defendant, and plaintiff appeals.

An action upon any writing for the payment of money or property is barred by the general statute of limitations if not brought within ten years after the cause of action thereon has accrued. R. S. 1889, chap. 103, art. 2, secs. 6773, and 6774. But in that statute it is provided that, "the provisions of this chapter shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute." Sec. 6791. And it is also further provided in that act, in effect, that the written acknowledgment of a debt shall be such evidence of a new or continuing contract as to take the debt out of the operation of the provisions of said article. Sec. 6793.

By chapter 45 of the Revised Statutes a code is provided for the organization and government of counties. In articles 4, 5, and 6 of that chapter we have the expression of the legislative will upon the subject of county warrants, prescribing the form of such warrants (sec. 3191); when to be drawn and by whom signed (sec. 3192); how to be negotiated (sec. 3194); by whom to be presented, and how paid by the treasurer of the

county (secs. 3193 and 3219); when to be canceled, and *when barred by the lapse of time* (sec. 3195).

By section 3193, it is provided that "no county treasurer in this state shall pay any warrant drawn on him unless such warrant be presented for payment by the person in whose favor it is drawn, or by his assignee, executor, or administrator; and when presented for payment, if there be no money in the treasury for that purpose, the treasurer shall so certify on the back of the warrant, and shall date and subscribe the same." And section 3195 provides that, "whenever any warrant drawn on any county treasurer shall have remained in the possession of the county clerk for five years, unclaimed or not called for by the person in whose favor it shall have been drawn, or his or her legal representatives, the county court shall, by proper order, entered of record, annul and cancel the same; and whenever any such warrant, being delivered, shall not be presented to the county treasurer for payment within five years after the date thereof, or, being presented within that time and protested for want of funds to pay it, shall not be again presented for payment within five years after funds shall have been set apart for the payment thereof, such warrant shall be barred and shall not be paid, nor shall it be received in payment of any taxes or other dues."

The decision in this case turns upon the proper construction of this last section. It will be observed that it deals with two classes of warrants, warrants regularly drawn but not delivered, and warrants delivered. As to the first class, if they are not called for in five years, the county court is authorized by entry of record to annul the same, as it might well be authorized to do, since the contract evidenced thereby remained unexecuted, and the instrument within its control. Not so, however, as to the second class, in which the warrants

having been delivered, the contract is executed, and legislation thereupon must have regard, not only to an orderly mode of transacting the business of the county in respect of its warrants, but to the vested rights acquired by the holders thereof. Consequently, as to such warrants the legislature could not, and did not, declare any circumstances under which they were to be or could be, annulled, invalidated, or made void. It is with this class of warrants and with the provisions of said section applicable to them that we have to deal in this case.

The trial court held that the plaintiff's right of action upon such warrants was limited by the provisions of the general statute of limitations quoted; and in order to sustain that ruling it must be held that the following paragraph of section 3195 does not contain a limitation upon a right of action on such warrants: "Whenever any such warrant * * * shall not be presented to the county treasurer for payment within five years after the date thereof, or, being presented within that time and protested for want of funds to pay it, shall not be again presented for payment within five years after funds shall have been set apart for the payment thereof, such warrant shall be barred and shall not be paid, nor shall it be received in payment of any taxes or other dues." For if it does contain such a limitation, the general statute does not apply, by force of its own terms, by which its provisions are not to be extended "to any action which is or shall be otherwise limited by any statute."

There is, therefore, upon this hypothesis no inconsistency between the two statutes and no question of a repeal of the one by the other in the case. Even if it was not so provided in express terms, the special statute being applicable to a particular subject, that subject is taken out of the operation of the general statute.

*Kansas City v. Smart*, 128 ·Mo. 272, and cases cited; *Payne v. Masek*, 114 Mo. 631, and cases cited; *Manker v. Faulhaber*, 94 Mo. 430, and cases cited.

Counsel for respondent contend that section 3195 does not provide a limitation to actions upon county warrants, but insist that· the provisions thereof, last quoted, were intended merely for the guidance of the county officers, and to place limitations upon these agents of the county as to the payment of such warrants. That the section does contain such directions and limitations in the provision "that any such warrant * * * shall not be paid, nor shall it be received in payment of any taxes or other dues" is beyond question; and excellent reasons are given why these restrictions upon county officers were and ought to have been embodied in the statute. But in the forefront of these limitations there stands another, of which this contention takes no account, i. e., "that such warrant shall be barred." What is to be done with this limitation? It can not apply to the county officers upon whom the intended restrictions are made full and complete by the prohibition that the warrant shall not be paid or received in payment for any taxes or other dues. It can not be ignored or dropped from the statute, and must apply according to its terms to every county warrant, of the class in question. How can the application of those terms to such warrants be made, except by *barring* an action thereon?

The word *"bar"* "has a peculiar and appropriate meaning in law." "In a legal sense it is a plea or peremptory exception of a defendant sufficient to destroy the plaintiff's action." 1 Jacob's Law Dict., 289; 1 Abbott's Law Dict., 125. "A special plea constituting a sufficient answer to an action at law and so-called because it *barred*, i. e., prevented, the plaintiff from further prosecuting it with effect, and if established by

proof defeated and destroyed the action altogether." 1
Burrill's Law Dict., 185.

The word "barred" must be held to have been
used in this section in its well defined technical sense.
R. S. 1889, sec. 6570. It necessarily implies an action
to be "barred," defeated, or destroyed, and the mean-
ing of the phrase "such warrant shall be barred" is
just as plain and unmistakable as if the phrase had
been written "action on such warrant shall be barred."
In fact, the form of expression used in this section is
the one most generally used in the statutes of this state
providing special limitations to actions, and is never
otherwise applied. Illustrations of this will be found
in the following statutes: R. S. 1889, secs. 65, 86, 184,
4529, 4532, 4558, 6382, 6770, 6771, and 6799. So that
it is perfectly plain upon the face of this statute that
it was the intention of the legislature, not only to
inhibit the payment of county warrants, or their receipt
for taxes or other dues by the county officers, except
upon the contingencies therein stated, but to provide a
period of limitation to actions upon such warrants.

The fact that this limitation is found in article 4,
entitled, "County Treasurers and County Warrants" of
chapter 45, entitled, "Counties," furnishes no reason
for eliminating this explicit provision from the statute,
and holding that it was intended simply "to prescribe
business rules for the government of the treasurer in
his management of the financial affairs of the county,
and to keep its liabilities under control." An article
treating specially of "County Warrants" is an appro-
priate place for a special limitation of actions upon
such warrants, and is just the place where such a pro-
vision would naturally be looked for and expected, if
any such limitation were intended.

Nor do we find any warrant for this assumption in
the fact that this legislation was first enacted in 1879,

subsequent to the case of *Logan v. County Court*, 63 Mo. 336, decided at the October term, 1876. While that case furnishes excellent reasons for so much of such legislation as prescribes rules for the government of county officers in respect of such warrants, that and other adjudications preceding such legislation furnish reasons equally as cogent for embodying therein a limitation to actions on such warrants, such as is provided in this section. For in that very case, although the question was raised, the court declined to express an opinion, "whether county warrants, in the hands of the holders, or their assigns, are subject to the statute of limitations, in a suit against the county, until there is money in the treasury to pay them," while in the prior case of *Howard v. Reynolds County*, decided in 1872, 51 Mo. 154, it was in effect ruled that a cause of action on a county warrant did not accrue until there were funds in the county treasury out of which the warrant might have been paid; and in the subsequent case of *Bank v. Franklin County*, 65 Mo. 105, decided at the April term, 1877, it was in effect held that a right of action accrued to the holder on a county warrant when presented and payment was refused, although there was no money in the treasury to pay such warrant.

This state of the adjudication on the existing law indicated the necessity for just such legislation as followed in 1879, and as we find in the section in question, whereby a limitation is provided for such warrants, the time indicated when it is to begin to run, how they may be kept alive and continued as causes of action, and when the same are to be barred, and the necessity therefor was just as urgent, as for the rules it prescribed for the government of county officials.

The principle established thereby that the holder of a county warrant is not to be barred of his action thereon, if he diligently seeks payment thereof, accord-

ing to the requirements of the statute, until after there shall have been money in the treasury set apart for its payment, is not only consonant with justice and fair dealing but conducive to the proper and orderly management of the financial affairs of the county in which all its creditors ought to be paid as near as may be in the order of their priority, and in which all ought to to be paid, except such as may have lost their right by their own *laches*.

Of course, we mean honest, *bona fide* creditors, for we fail to perceive how the protest of a warrant under this statute for want of funds can impair any valid defense the county may have against it on the merits, or any ground for fear that by this process the county might be compelled to pay fraudulent warrants. In fact, we fail to find in the history of this legislative enactment, in the purpose sought to be accomplished by it, in the consequences that will flow from it, as a special statute of limitation upon county warrants, any reason (if we had the power to do so, which of course we have not) for striking out one of its prominent and salient provisions; or for giving that provision a different construction from that which necessarily flows from its plain and unambiguous terms, when applied to the subject-matter being treated.

It follows, then, that section 3195 being a special statute of limitation governing actions upon county warrants, the warrants in suit are withdrawn from the operation of the general statute of limitations, and the trial court erred in holding that the plaintiff's action was barred by that statute; and as upon the admitted facts his action was not barred by the special statute, the judgment can not be for the right party. The judgment is therefore reversed and the cause remanded for new trial. All concur.

ON MOTION FOR REHEARING.

BRACE, C. J.—Since the foregoing opinion was handed down, the respondent has filed a motion for rehearing in which it is suggested, that, although the whole case was disposed of in the court below, at his instance, on the plea of the statute of limitations, there are certain questions presented on the agreed statement of facts which if decided in his favor would warrant an affirmance of the judgment, and asks that these questions be now passed upon. To this course the appellant interposes no objection, and there can be no question but that it is within our power to do· so. *Ozark Plateau Land Co. v. Hays*, 105 Mo. 143; *Carr v. Coal Co.*, 96 Mo. 149; *Munford v. Wilson*, 15 Mo. 540. It will accordingly be so done.

I. In *Barnard & Co. v. Knox County*, 105 Mo. 382, it was held that a county warrant issued in payment of a debt created after the county court had issued warrants exhausting the revenue provided for the year in which such debt was created, is void.

It appears from the agreed statement of facts that during the year 1879 certain warrants were issued on the general fund of the county amounting to the sum of $28,746.51, and that on the seventh of April, 1880, there was a warrant issued to one Samuel C. Davis on the general fund of the county for the sum of $19,533. That these warrants were not issued for county purposes, but issued in obedience to a peremptory writ of *mandamus* from the circuit court of the United States for the eastern district of Missouri, payable out of the general funds of Knox county for the amount of judgments, interests, and costs recovered in said circuit court on sundry bonds and coupons issued by Knox county to the Missouri and Mississippi Railroad Com-

pany under an act of the legislature approved February 25, 1865. It was further agreed that the revenue for the year in which the warrant was issued to John Gibler June 30, 1880, for services as sheriff, "had not been exhausted by the issues of warrants for county purposes * * *" and "that the issue of said warrant was not in excess of the revenues provided for such year unless it should be held that the Davis warrant for $19,533.31 or the warrants for $28,746.57 aforesaid were proper charges against the revenues of such county for such year."

These warrants were for an indebtedness incurred by the county prior to the adoption of the constitution of 1875, and are not within the restrictions of article 10, section 11 of that instrument, but expressly excepted therefrom, consequently could not be a charge upon the fund levied within those restrictions for the ordinary annual current expenses of county government. The warrant for $182.35 in favor of said Gibler is therefore not void by reason of the prior issuance of these warrants.

II. It was further agreed that the second warrant sued on, issued to Timothy Kelley, February 14, 1883, for services in taking care of county paupers was not in excess of the revenues provided for that year, and that same had not then been exhausted by the issue of warrants for county purposes, if it shall be held that the fiscal year begins on the first of January in each year, but if it be held that the fiscal year begins on the first of March in each year, then such revenues were exhausted prior to February 14, 1883, and respondent contends that the fiscal year does begin on the first of March in each year.

It is possible that there may be some good reasons why the fiscal year should begin on the first of March in each year, and respondent thinks there are, in the

fact that the county is required at its *May* term to apportion the revenue to the several funds provided for, and the collector is required to return his delinquent list and make final settlement with the county court on the first Monday in *March* in each year. However cogent these reasons may be, we are relieved of the necessity of considering them by the fact that it is otherwise provided by statute and has been for more than twenty-five years (R. S. 1889, section 8 589; R. S. 1879, section 7563; Session Acts, 1868, page 178, section 1, by which it is provided that "the fiscal year of the state shall commence on January first and terminate on the thirty-first day of December in each year, and the books, accounts, and reports of the public officers shall be made to conform thereto").

In contemplation of law the revenues of the state for the year past are to be in the hands of its officers, on or before the first day of January of the next year. R. S. 1889, section 7605. If they are not, but outstanding in the hands of the taxpayer, it is under penalty, and while time after that date for obvious reasons is extended to county collectors to exhibit their accounts and vouchers to be audited and adjusted, until immediately after their final settlement with the county court on the first Monday in March (R. S. 1889, section 8595), and the day, whenever it may be, when they are so audited and adjusted will become to such a collector practically the end of the fiscal year for him, for all other purposes, where no similar exception is provided for, the fiscal year by the terms of the statute, ended on the thirty-first day of December preceding, and according to the agreed facts this warrant is not void.

III. Lastly, it is contended that this action can not be maintained and a general judgment rendered against the county, for the reason that each of the warrants

sued on is drawn on its appropriate fund, and in support of this contention we are cited to *Moody v. Cass Co.*, 85 Mo. 477; *Campbell v. Polk County Court*, 76 Mo. 57, and *Campbell v. Polk Co.*, 49 Mo. 214.

These are all cases in which it was sought to obtain judgment against the county on warrants or demands against a fund that was not a county fund, i. e., "the road and canal fund," or "internal improvement fund." If the learned counsel had gone a little further back and examined the case of *Pettis Co. v. Kingsbury*, 17 Mo. 479, on which all these cases are bottomed, or even read with care the opinion in the case of *Campbell v. Polk Co.*, he would have seen that the warrants in these cases were drawn upon a fund simply "managed by the county court as a board of internal improvement" and "created wholly and exclusively by the bounty of congress and the state, and which the county had no power by taxation or otherwise to create or replenish." Of course an obligation created by the county court on such a fund created no obligation on the county.

But those cases bear no analogy to the case in hand, which is an action upon obligations created and imposed upon the county by law, payable out of the revenue to be collected for county purposes. It is a county debt, the fund for the payment of which the county court has power "to create and replenish by taxation." That it must be paid out of funds appropriated and set apart for it, like all other demands, or that there is no money in the fund upon which the warrant is drawn, is no reason why the demand should not be established by judgment. "A warrant lawfully issued in payment of an indebtedness of one year may be paid out of the revenues of a subsequent year." *Reynolds v. Norman,* 114 Mo. 509.

It follows from what has been said that the judgment of the circuit court ought to be reversed and cause

remanded with directions to such court to enter judgment for the plaintiff for the amount sued for. The motion for rehearing is therefore denied, and it is so ordered; all the judges concurring.