THE STATE *ex rel.* VAUGHAN *et al.* v. APPLEBY *et al.*,
*Appellants.*

Division One, December 15, 1896.

1. **County Revenue:** DIVISION OF FUNDS: TRANSFERS: STATUTE. The county court may make transfers to the county contingent fund from any surplus remaining in the other funds provided for in Revised Statutes, 1889, section 7663, and can, after such transfers are made, pay proper demands on such contingent fund.

2. ———: FISCAL YEAR. The county fiscal year begins on the first day of January and ends on the thirty-first day of December of each year.

*Appeal from Greene Circuit Court.*—HON. J. T. NEVILLE, Judge.

AFFIRMED.

*Massey & Tatlow* for appellants.

(1) The liability of the .county to pay costs in criminal cases is strictly a statutory liability, and the question of justice or injustice to the parties claiming costs is not a matter for consideration here. *State ex rel. v. Oliver,* 116 Mo. 188; *Bright v. Pike County,* 69 Mo. 519; *Person v. Ozark County,* 82 Mo. 491.    (2) Statutes providing for the collection of costs in either criminal or civil .cases being in derogation of the common law, must be literally and strictly construed. *Ring v. Vogel, etc., Co.,* 46 Mo. App. 374. · (3) Section 7663 is *in pari materia* with the other sections of the statute, creating liability on the part of the counties for costs in criminal cases, and all must be construed together. (4) By the express language of the concluding part of

the fifth subdivision of section 7663, the liability of the
county to pay costs in criminal cases is limited to "one
fifth of the total revenue of such county for county
purposes for any one year." (5) The year referred to
and contemplated by section 7663 is a fiscal year,
beginning the first day of June, or at the time the
order was made at the May term, and ending one year
thereafter and is not a calendar year. *Glasco v. Rowse,*
43 Mo. 479; *De Giverville v. Legg,* 48 Mo. App. 573.
(6)    The order of the county court made at the May
term, 1894, setting aside one fifth of the total revenue
of the county for that year to the contingent fund is in
form and substance a substantial compliance with the
requirements of section 7663, as is the order of said
court made at the May term, 1895, in relation to the
apportionment of the county revenue for that year.

*Watson & Pepperdine* for respondents.

(1) It is the duty of a county to pay costs in crim-
inal cases when properly charged therewith. R. S.
1889, secs. 4397, 4400. (2) A county is bound to pay
its debts lawfully created. *Reynolds v. Norman,* 114
Mo. 513. (3) The liability of a county for criminal
costs is limited only by article 10, section 12 of consti-
tution of Missouri, and the fifth subdivision of section
7663, Revised Statutes, 1889. (4) The county court
had no right to apportion and subdivide the revenue of
1894 by its order made June 7, 1895. *State ex rel. v.
Schell,* 36 S. W. Rep. 206. (5) Section 7663 is not
mandatory nor self-enforcing. (6) The year mentioned
in section 7663 and section 12, article 10 of constitution
is a calendar year. R. S. 1889, secs. 7663, 7605, 7629.

MACFARLANE, J.—This is a proceeding by *mandamus*
commenced in the circuit court of Greene county against

the judges of the county court of that county to compel them to issue warrants for the payment of certain criminal costs duly certified to the court for payment.

Respondents, the judges of the county court, by return, defend their action in refusing to issue the warrants, on the ground that the part of the revenue, apportioned to the contingent fund for the years in which the liability of the county for those costs accrued, has been wholly exhausted.

The circuit court ordered a peremptory writ, and defendants appealed.

It appears from an agreed statement, upon which the case was determined by the circuit court, that the total amount of such costs is $2,693, of which amount $846.95 is included in fee bills certified and filed with the county clerk on and between the first day of June, 1894, and the thirty-first day of May, 1895, and the balance, $1,846.05, is for costs included in fee bills certified and filed with the county clerk on and between the first day of June, 1895, and the thirty-first day of May, 1896.

The total assessed valuation of property in Greene county for the year 1894 was $15,692,000, and for the year 1895 was $14,380,000 in round numbers.

For the year 1894 the court levied for county purposes forty-five cents on the hundred dollar valuation. It is estimated that the amount of revenue that would be realized on this valuation would be $60,000. Of this it apportioned to the contingent fund one fifth, $12,000, and added thereto the sum of $2,104, a part of a surplus remaining from the previous year, making a total placed to the contingent fund of $14,104.

For the year 1895, the court levied for county purposes fifty cents on the hundred dollars' valuation, and estimated that $60,000 of revenue would be realized on that levy. Of this it also apportioned one fifth, or

$12,000 to the contingent fund, and of the revenue then on hand it placed to the credit of the same fund the sum of $5,775, thus making the amount to the credit of the contingent fund $17,775. The treasurer placed the money to the credit of the respective funds as they came into his hands.

These orders were made at or about the time the levies were made for the respective years.

Between May 24, 1894, and May 23, 1895, the treasurer paid warrants, drawn on the contingent fund, equal to the entire amount placed to its credit, and when this suit was commenced there was no money to the credit of that fund, with which to pay the cost bills. Between May, 1895, and February, 1896, the treasurer had paid out on warrants all the revenue apportioned to the contingent fund in 1895.

Certain criminal costs are payable by the county, and, when bills of such costs, duly certified, are presented to the county court, a warrant for the payment of the amount thereof should be drawn upon the treasurer. R. S., secs. 4397, 4400 and 4415.

The only limitation upon the power and duty of the county court is that declared by section 12, article 10 of the constitution which makes it unlawful for any county "to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the voters thereof voting at an election to be held for that purpose."

The only reason given by the county court for refusing to issue the warrants is, that the fund, out of which such demands are payable, is exhausted. It is not insisted that the income and revenues for the respective years are not sufficient to discharge all the liabilities of the county incurred during the year.

Section 7663 authorizes county courts "to appropriate, apportion and subdivide all the revenues collected, and to be collected, and moneys received and to be received, in the various counties in the state, for county purposes." It provides for dividing the income and revenues into five funds to be known as the (1) pauper fund, (2) the road and bridge fund, (3) the fund for the payment of the salary of county officers, (4) fund for the payment of the fees of grand and petit jurors, judges and clerks of elections and witnesses for the grand jury, and (5) "the contingent fund," and provides that the last or contingent fund "shall in no case exceed one fifth of the total revenue of such county for county purposes for any one year."

It is insisted that, as one fifth of the revenue for county purposes was placed to the credit of the contingent fund, the court has no power to exceed that amount in payment of contingent demands. In other words, that the statute limits the amount that may be appropriated to the payment of contingent expenses and liabilities of the counties to one fifth of the revenue.

We do not think section 7663 can be given such a construction. We must assume that the legislature intended that all just and proper liabilities of the county, created in one year, should be paid out of the revenues and income of that year. The provisions for dividing and apportioning the revenues to be collected for the year into the various funds does not contemplate that a just demand against the county should go unpaid because the revenue appropriated to the particular fund, out of which it is primarily payable, may have been exhausted, if there be money in the treasury unappropriated, or not needed for the purposes for which it was appropriated, from which it can be paid. When it is found that there is a surplus in one fund,

and a deficiency in another, there is nothing in the law, or other reason, why the court may not transfer the surplus in order to make up the deficiency. Indeed sections 3189 and 3190 expressly provide for such transfer.

It is impossible for the court, in advance, to more than approximate that amount of money necessary to meet all proper demands for the respective purposes mentioned in section 7663. This is particularly so in respect to the demands that may be denominated "contingent," in which criminal costs are included. The liability of the county for criminal costs is not under the control of the county courts, is not created by them, nor is it in their power to so regulate it as to limit its amount to a sum within the funds set apart for its payment.

By the statute it could only have been intended that the county court should, in the first instance, apportion the funds approximately to the purposes mentioned, and that warrant should be drawn upon and paid out of the proper fund until it should be exhausted, or until all the liabilities for which the particular fund was apportioned should have been paid. The object of the legislature was to prevent, as far as possible, discriminations against any class of liabilities or expenses of the county.

The limitation of the apportionment of the contingent fund, to one fifth of the revenue, only applies to the original appropriation. It does not limit the amount of contingent expenses and liabilities the county may pay, if the income and revenue, after paying the demands against other funds, are sufficient to pay them. That this limitation has no broader scope is manifest from the act approved March 31, 1893 (Acts 1893, p. 131), and from sections 3189 and 3190, *supra*. The act mentioned provides expressly for the payment

"of costs taxed against any county in any suit in which the state or county is a party" out of the surplus revenues of a subsequent year. That such costs may be paid out of the surplus revenues of the year in which they are taxed, is necessarily implied.

It seems to be conceded that the surplus income and revenue is sufficient to pay these demands. Whether there is such concession or not, as the circuit court ordered the writ, we must assume that a sufficiency was found to exist.

The county court should issue the warrants, and transfer to the contingent fund, from any surplus remaining in the treasury, an amount sufficient to pay them.

Respondents contend that the fiscal year of the county begins on the day the levy of taxes for county purposes is made. This position is erroneous. The fiscal year begins on the first day of January and ends on the thirty-first day of December, of each year. *Wilson v. Knox County*, 132 Mo. 399. The judgment is affirmed. All concur.